# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Ryan J. White,

                Plaintiff,

v.

Governor Mark Dayton, et al.,

                Defendants.

Case No. 11-cv-3702 (NEB/DJF)

Gary P. Scott,

                Plaintiff,

v.

Governor Mark Dayton, et al.,

                Defendants.

Case No. 11-cv-3714 (NEB/DJF)

Darin D. Davidson,

                Plaintiff,

v.

Mark Dayton, Governor, et al.,

                Defendants.

Case No. 11-cv-3733 (NEB/DJF)

James D. Fries,

                Plaintiff,

v.

Governor Mark Dayton, et al.,

                Defendants.

Case No. 12-cv-0062 (NEB/DJF)

---

Joseph Allen Hajek,                                    Case No. 12-cv-0343 (NEB/DJF)

          Plaintiff,

v.

Governor Mark Dayton, et al.,

          Defendants.

Lloyd Hartleib,                                        Case No. 12-cv-0344 (NEB/DJF)

          Plaintiff,

v.

Governor Mark Dayton, et al.,

          Defendants.

Karl Godfrey Stevens,                                  Case No. 12-cv-0495 (NEB/DJF)

          Plaintiff,

v.

Governor Mark Dayton, et al.,

          Defendants.

Dale Allen Williams, Sr.,                              Case No. 12-cv-0881 (NEB/DJF)

          Plaintiff,

v.

Mark Dayton, Governor, et al.,

          Defendants.

## INTRODUCTION

This matter is before the Court on eight related lawsuits, all challenging the legality of conditions at the Minnesota Sex Offender Program ("MSOP"), and all previously stayed during the pendency of a related class action lawsuit, *Karsjens v. Minnesota Department of Human Services*, No. 11-CV-3659 (DWF/TNL) ("*Karsjens*"). Final judgment has now been entered in *Karsjens*. Accordingly, the Court lifted the stay in all related lawsuits, including those now before the Court.

## BACKGROUND

For well over a decade, "clients" of the MSOP—that is, involuntary civil detainees of the State of Minnesota—have vigorously attacked the legality of conditions at the MSOP. In *Karsjens*, a class of plaintiffs consisting of all clients who were then committed at the MSOP, and who were represented by counsel, pursued numerous claims regarding the lawfulness of conditions at the MSOP. During the pendency of the *Karsjens* lawsuit, the Court stayed several dozen other actions that had been or would be brought in this District by MSOP clients, also attacking the legality of conditions at the MSOP. Each of the Plaintiffs in the stayed lawsuits was also a member of the class certified in *Karsjens*, and some of the claims raised in the individual civil actions duplicated the claims that were being litigated in *Karsjens*. Thus, a stay was appropriate because the resolution of *Karsjens* would also resolve many of the claims brought in the separate actions.

Although each of the seventy-one cases stayed pending the adjudication of *Karsjens* was similar in some respects, the eight cases now before the Court are especially alike. Each of these eight lawsuits was filed within a short period of time, with the last of the lawsuits filed only a little more than three months after the first. In each of the eight complaints, the Plaintiff raises precisely the same twenty-one causes of action challenging the legality of conditions at the MSOP. And

each of those twenty-one causes of action is premised upon substantially the same factual allegations. Indeed, each of the complaints used to commence these eight lawsuits is practically identical, with only the Plaintiffs and a small number of the dozens of defendants changing from one case to the next.[1]

Each of the eight lawsuits also now sits in the same procedural posture. In each case, the Plaintiff has applied for *in forma pauperis* ("IFP") status. Each of the plaintiffs qualifies financially for IFP status. But because the plaintiffs have applied for IFP status, their complaints are subject to substantive preservice review under 28 U.S.C. § 1915(e)(2)(B):

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that … the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

The Court has now conducted the required review of these lawsuits under section 1915(e)(2)(B) and concludes, for the reasons provided below, that most of the claims brought in these matters are not viable because the claims are now precluded by *Karsjens*, the Plaintiffs have failed to state a claim on which relief may be granted, or for other reasons. Accordingly, the Court recommends that the non-viable claims be dismissed pursuant to section 1915(e)(2)(B). The Court also grants plaintiffs' IFP applications with respect to the few remaining

---

[1]  Because the eight cases are so substantially alike, for ease of reference the Court will generally discuss the cases as though they constituted a single lawsuit throughout this Report and Recommendation. Only when it is necessary to distinguish among the eight cases will the Court discuss the cases separately, but to be clear, the Court has reviewed all eight of the pleadings individually.

claims and direct that service of process be effected on the Defendants in their official capacities as agents of the State of Minnesota.

## DISCUSSION

### I.        Section 1915(e)(2)(B) Standard of Review

An IFP application will be denied, and an action will be dismissed, when an IFP applicant has filed a complaint that fails to state a claim on which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam).   In reviewing whether a complaint states a claim on which relief may be granted, the Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level …."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.  In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Pro se complaints are to be construed liberally, but the pleading still must allege sufficient facts to support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

### A.        Section 1983 Claims

The bulk of the claims in the eight cases proceeding now before the Court arise under 42 U.S.C. § 1983.  Plaintiffs allege that Defendants, who—with one exception in each lawsuit— are employees of the MSOP or state officials tasked with overseeing the MSOP, have violated their constitutional rights.  Plaintiffs bring their section 1983 claims against each Defendant both in his or her personal capacity and in his or her official capacity as an agent of the State of

5

Minnesota.  "Personal-capacity suits … seek to impose individual liability upon a government officer for actions taken under color of state law."  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).  By contrast, "official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  "Suits against state officials in their official capacity therefore should be treated as suits against the State."  *Id.*  The Court will examine Plaintiffs' section 1983 claims against the Defendants in their personal capacities separately from the official-capacity claims.

### 1. Personal-Capacity Claims

In each of the eight lawsuits, Plaintiffs allege that more than two dozen Defendants violated their constitutional rights under section 1983.  Plaintiffs' section 1983 claims are many and varied.  For example, Plaintiffs allege that policies at the MSOP place unwarranted restrictions on their freedom of speech (Ground Two) and freedom of religious practice (Ground Seven); that they have undergone unreasonable searches and seizures (Ground Three); that they have been denied procedural due process (Ground Eleven); and that they have been subjected to cruel and unusual punishment during their time at MSOP (Ground Nine).  The Court will discuss each of those claims, and the factual allegations upon which Plaintiffs premise those claims, in greater detail below in the context of Plaintiffs' official-capacity claims under section 1983.

Regarding Plaintiffs' personal-capacity claims: "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).  "Accordingly, to succeed on a personal-capacity claim under § 1983, a litigant must prove that the specific defendant being sued acted unlawfully himself or herself."  *See Washington v. Craane*, No. 18-CV-1464 (DWF/TNL), 2019 WL 2147062, at *2 (D. Minn. Apr. 18, 2019).  Put another way, to adequately plead a claim under section 1983 against

Defendants in their personal capacities, it is not enough for Plaintiffs to allege in a general sense that their constitutional rights have been violated. Rather, Plaintiffs must plead factual allegations that, if later proved true, would establish that the specific person or persons Plaintiffs sue in their personal capacities violated Plaintiffs' constitutional rights. And those allegations of personal involvement must, like all factual allegations, at a minimum be *plausible* to be entitled to the usual assumption of truth afforded to factual allegations at the pleading stage. *See Twombly*, 550 U.S. at 555.

Plaintiffs' complaints fall short of this plausibility standard with respect to each of the personal-capacity claims. With very few exceptions, Plaintiffs allege that every single one of the many Defendants named in the lawsuits personally committed each alleged instance of malfeasance. For example, one of the Plaintiffs, Ryan J. White, alleges that

> [t]he defendants, including specifically, Governor Mark Dayton, Attorney General Lori Swanson, Cal Ludeman, Lucinda Jesson, Dennis Benson, Daniel Storkamp, Gregory Carlson, Kevin Moser, Janine Hébert, Thomas Lundquist, Elizabeth Barbo, John Doe or Jane Doe[,] Debbie Thao, Dr. Ann Marie LaValley-Wood, Terrance Kneisel, Kelli Minor, Timothy Gorr, David Bornus, Erik Skon, Jamie Jungers, Sue Johnson, Yvette Anderson, Ann Zimmerman, Amanda Furey, Andrea Kosloski, Sue Linda Anderson, and James Martinez, have maliciously violated the courts order for treatment with the willful intent to prolong Mr. White's confinement.

("Complaint") (ECF No. 1 ¶ 47.)[2]  Nearly every factual allegation in every pleading takes this form. Continuing with the same Complaint, Mr. White alleges that

> defendants, including specifically, Governor Mark Dayton, Attorney General Lori Swanson, Cal Ludeman, Lucinda Jesson, Dennis Benson, Daniel Storkamp, Gregory Carlson, Kevin Moser, Janine Hébert, Thomas Lundquist, Elizabeth Barbo, John Doe or

---

[2]  For ease of reference, all citations to the Complaint in this matter refer to the pleading filed in *White v. Dayton*, No. 11-CV-3702 (ECF No. 1) (D. Minn. filed Dec. 27, 2021). As explained above, each of the eight complaints are substantially identical to one another, though the specific paragraphs in which parallel allegations or claims may be found sometimes differ slightly from pleading to pleading.

> Jane Doe Debbie Thao, Dr. Ann Marie LaValley-Wood, Terrance
> Kneisel, Kelli Minor, Timothy Gorr, David Bornus, Erik Skon,
> Jamie Jungers, Sue Johnson, Yvette Anderson, Ann Zimmerman,
> Amanda Furey, Andrea Kosloski, Sue Linda Anderson, and James
> Martinez, deny the M.S.O.P. clients/patients, including Mr. White,
> the use of the gym, yard, and recreation, for several days because
> one client/patient has been "found," unilaterally by the M.S.O.P.
> staff, to have violated the rule regarding the use of profanity.

(ECF No. 1 ¶ 74.)  These paragraphs are only two of dozens of examples that the Court could

quote from any of the eight complaints in which Plaintiffs allege that each and every Defendant is

responsible for an action, policy, or incident that Plaintiffs believe to be unlawful.

Plaintiffs' practice of buckshot pleading leads to absurdities throughout the complaints.

Read literally, the above-quoted paragraph alleges that Defendant Mark Dayton, who was the

Governor of the State of Minnesota at the time these lawsuits were filed, *personally* denied the

MSOP clients from accessing the gym, yard, and recreation areas after one of the MSOP clients

allegedly violated a rule on use of profanity.  This is, simply put, not plausible.  Nor is it plausible

that former Governor Dayton was personally responsible for the MSOP policies on visitors (*see

id.* ¶ 100), use of linens (*see id.* ¶ 101), or canteen access (*see id.* ¶¶ 103-04).  And still less

plausible is that the former governor personally searched Plaintiffs' cells (*see id.* ¶ 107), or

personally seized Plaintiffs' property during those searches (*see id.* ¶¶ 108-09).  And this kitchen-

sink approach carries over from Plaintiffs' factual allegations to their legal claims as well.  With

only one exception—Plaintiffs' oath of office violation claim—Plaintiffs raise each of their

twenty-one causes of action against every single one of the Defendants they name to each lawsuit.

(*See* ECF No. 1 ¶¶ 133, 136, 139, 142, 145, 148, 151, 154, 157, 160, 163, 166, 169, 172, 175, 178,

181, 184, 187, & 190.)

One problem this approach to pleading creates is that it causes the Plaintiffs to allege things

that are almost certainly not true and that Plaintiffs almost certainly know to not be true, in

8

violation of Rule 11(b)(3) of the Federal Rules of Civil Procedure.  Another problem is that because Plaintiffs impute nearly every action in the Complaint to every Defendant, it is impossible for the Court to determine from the pleadings which of the allegations it should construe literally, and which it should assume result from sloppy draftsmanship.  The Court does not believe that Plaintiffs intended to plead that the high-ranking executive officials of the State of Minnesota personally conducted searches of their property.  But because Plaintiffs include every Defendant in nearly every allegation, it is impossible to determine from the pleading to *which* of the many Defendants Plaintiffs actually intended their factual allegations to apply.[3]  For that reason, the Court cannot say that Plaintiffs' buckshot allegations scattered throughout the complaints are much more plausible with respect to *any* of the other Defendants named.  Although certain of those Defendants might conceivably have committed the actions Plaintiffs allege, the Court cannot conclude from the pleading which of those Defendants Plaintiffs actually believe are responsible for any particular action.

Two exceptions to Plaintiffs' shotgun pleading approach merit further discussion, however.  First, Plaintiffs bring Ground Twenty-One of their complaints against just Defendants Mark Dayton, Lori Swanson, Cal Ludeman, and Lucinda Jesson for having failed to uphold the "sacred oath of office" required by Article VI of the U.S. Constitution by violating Plaintiffs' constitutional rights ("Oath of Office Violation Claim").[4]  (*See* ECF No. 1 at 76, emphasis removed.)  This claim is an improvement on the others insofar as Plaintiffs specify precisely who they believe violated

---

[3]  The pleadings do contain a paragraph concerning the general role of each defendant in the operation or oversight of MSOP.  (ECF No. 1 ¶¶ 13-40.)  But these paragraphs do not explain which of the defendants is believed to be responsible for which of the many putatively unlawful actions being alleged.

[4]  Although somewhat unclear, Ground Twenty-One appears to seek relief from Defendants Dayton and Swanson only in their official capacities and from Ludeman and Jesson in both their official and personal capacities.  (*See* ECF No. 1 ¶ 193.)

the law in a particular way. That said, the Court has not uncovered any case law from any federal jurisdiction that a litigant may seek relief simply for the violation of an oath of office. In any event, Plaintiffs' claim under Article VI is premised upon Defendant Dayton, Swanson, Ludeman, and Jesson's supposed constitutional infringements that putatively caused them to violate their oaths. But as explained above, Plaintiffs do not adequately allege Defendants Dayton, Swanson, Ludeman, or Jesson—or any other particular Defendant—acted unlawfully. It follows that Plaintiffs fail to adequately allege Defendants Dayton, Swanson, Ludeman, or Jesson violated their oaths of office through their actions. The Court therefore recommends that Ground Twenty-One be dismissed without prejudice for failure to state a claim on which relief may be granted, notwithstanding the fact that Plaintiffs raise somewhat more specific factual allegations against the Defendants to that particular claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Second, in a few instances Plaintiffs do specify that one or a small number of Defendants are responsible for specific conduct. For example, Plaintiff White[5] alleges that:

- Defendants Dennis Benson, Gregory Carlson, Kevin Moser, and Terrance Kneisel informed him that "all clients/patients share the responsibility of maintaining the M.S.O.P.'s rules, directives, and policies, and that staff expects the other clients/patients to correct his behavior." (ECF No. 1 ¶ 74.)

- Defendants Dayton, Swanson, Ludeman, Jesson, Benson, Storkamp, Carlson, and Moser "have minted their own coin money and/or currency, which has been inscribed with 'M.S.O.P. BUSINESS ENTERPRISE PROGRAM — GOOD FOR ONE DOLLAR IN TRADE' for the purpose of disenfranchising Mr. White and to separate him further from free society by restricting the ability to purchase both from other clients/patients and from small businesses in the community." (*Id.* ¶ 103.)

- Defendant Ann Marie LaValley-Wood informed Mr. White that "the program 'is not about completion, but about behavioral change.'" (*Id.* ¶ 125, emphasis removed.)

---

[5] Each of the eight complaints contains substantially similar allegations.

These allegations are also improvements insofar as Plaintiffs attribute specific conduct to specific persons, which is necessary to establish personal liability under section 1983. *See Madewell*, 909 F.2d at 1208. The problem, though, is that none of the more specific allegations permits a plausible inference that any Defendant violated Plaintiffs' constitutional rights. That the MSOP employees informed clients they are responsible for following rules, or that state officials created an alternative currency program for use inside of the MSOP,[6] or that MSOP clients have been told their detention is "about behavioral change," (ECF No. 1 ¶ 125), is hardly enough to demonstrate that any Defendant has violated the law, as none of these things amounts to even a colorable example of a constitutional infringement.

In sum, no Plaintiff plausibly alleges that any *particular* Defendant violated the law. Accordingly, the Court recommends that each of Plaintiffs' section 1983 claims against Defendants in their personal capacities be dismissed without prejudice.[7]

### 2. Official-Capacity Claims against State Officials

Plaintiffs also allege each of their section 1983 claims against Defendants in their official capacities. In most instances Plaintiffs assert claims against Defendants in their official capacities as agents of the State of Minnesota, but each lawsuit names one county official, presumably in his

---

[6] The Court notes Plaintiffs do not allege they are barred from possessing currency or transacting business with outside entities using that currency. Indeed, Plaintiffs acknowledge in their IFP applications and accompanying documents that they possess ordinary currency in an account the MSOP maintains. (*See, e.g.*, ECF No. 3, Aff. of Ryan White ¶ 7.)

[7] As explained below, Plaintiffs inadequately plead many of their claims under section 1983 against Defendants in their official capacities as well. To the extent Plaintiffs fail to state a claim on which relief may be granted under section 1983 against Defendants in their official capacities, those deficiencies apply with equal force to Plaintiffs' claims against the Defendants in their personal capacities. That Plaintiffs fail to adequately allege the personal involvement of specific Defendants is an additional basis upon which the Court recommends that the personal-capacity claims be dismissed.

or her official capacity as an agent of their county.[8]  The Court first addresses Plaintiffs' official-capacity claims against the state officials and then addresses Plaintiffs' official-capacity claims against the remaining county Defendants.

Plaintiffs appear to seek monetary relief from Defendants only insofar as Plaintiffs sue Defendants in their personal capacities.  (*See, e.g.*, ECF No. 1 ¶ 134, "Plaintiff requests that the Court award compensatory damages against all defendants in their individual capacities."; *id.* at 77, seeking compensatory damages from defendants in their individual capacities only.)  This is for the best: "[T]he Eleventh Amendment prohibits federal-court lawsuits seeking monetary damages from individual state officers in their official capacities … ." *Treleven v. University of Minnesota*, 73 F.3d 816, 818 (8th Cir. 1996).  To the extent Plaintiffs do, in fact, seek monetary relief from the state Defendants in their official capacities, that aspect of their official-capacity claims must be dismissed.

A different analysis applies to Plaintiffs' claims for injunctive relief.  "*Ex parte Young* [209 U.S. 123 (1908)] and its progeny teach that a private party may seek prospective injunctive relief in federal court against a state official, even if the state is otherwise protected by Eleventh Amendment immunity." *Randolph v. Rodgers*, 253 F.3d 342, 345 (8th Cir. 2001).  Plaintiffs' claims broadly allege Defendants are responsible for implementing policies that violate MSOP clients' constitutional rights, and they seek a Court order directing Defendants to amend those policies.

---

[8]  The pleadings are confusing in this regard.  Mr. White, for example, alleges that a John or Jane Doe Marshall County Social Services Director named as a defendant to his lawsuit is "employed by the D.H.S."—i.e., the Minnesota Department of Human Services.  (ECF No. 1 ¶ 25.) If this were true, then the John or Jane Doe Defendant would be a state official like all the others. Without further factual support, however, the Court cannot conclude the allegation that these county defendants are agents of the state rather than the county is plausible.

The proper Defendants to Plaintiffs' official-capacity claims are the officials with authority to amend the policies at issue; the Court cannot otherwise grant effective injunctive relief. But Plaintiffs' buckshot approach to pleading is more defensible with respect to their official-capacity claims, since it is difficult to say at the initial pleading stage which of the state officials is ultimately responsible for implementing each of the policies and practices Plaintiffs claim are unlawful. While it is overwhelmingly implausible that the former governor of Minnesota conducted individual room searches at MSOP, it is far more plausible that the governor has the authority to amend executive policy with respect to searching rooms at the MSOP. The Court thus will not recommend dismissing Plaintiffs' official-capacity claims on the ground that they fail to identify which official is responsible for implementing the policies at issue. This determination does not necessarily mean Plaintiffs' official-capacity claims under section 1983 are viable, however. Rather, the Court must more specifically address each ground for relief in Plaintiffs' complaints.[9]

### a. Failure to Provide Treatment (Ground One)

The purpose of the MSOP is to treat sexually dangerous or psychopathic persons. In Ground One, Plaintiffs contend the MSOP has failed to fulfill its duty to provide Plaintiffs "with the best available and most qualified treatment" and that this failure to provide treatment violates Plaintiffs' constitutional rights. (*See* ECF No. 1 ¶ 133.)

Plaintiffs have already litigated this claim. In *Karsjens*, the Court certified a class consisting of "all patients currently civilly committed in the Minnesota Sex Offender Program pursuant to Minn. Stat. § 253B." *See Karsjens v. Jesson*, 283 F.R.D. 514, 520 (D. Minn. 2012) (order certifying class). Count III of the operative pleading in *Karsjens* presented a claim of

---

[9] The Court addresses Plaintiffs' section 1983 claims in a somewhat different order than Plaintiffs present the claims in the complaints because certain claims are more readily understood when addressed in relation to other claims.

"failure to provide treatment in violation of the Fourteenth Amendment to the United States constitution and the Minnesota constitution" pursuant to section 1983 against several MSOP employees named in their official capacities as agents of the State of Minnesota. *See Karsjens v. Jesson*, No. 11-CV-3659 (DWF/JJK), ECF No. 635 at 64 (D. Minn. Oct. 28, 2014) (capitalization altered). The Court ultimately dismissed that claim with prejudice. *See Karsjens v. Piper*, 336 F. Supp. 3d 974, 983-84, 998 (D. Minn. 2018), affirmed in relevant part by, *Karsjens v. Lourey*, 988 F.3d 1047, 1051 (8th Cir. 2021).

Because Plaintiffs have already litigated to judgment their right-to-treatment claim, the doctrine of res judicata now bars them from litigating it further. "In applying the Eighth Circuit test for whether the doctrine of res judicata bars litigation of a claim, we examine whether (1) a court of competent jurisdiction rendered the prior judgment, (2) the prior judgment was a final judgment on the merits, and (3) both cases involved the same cause of action and the same parties." *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir. 2002), abrogated on other grounds by *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28 (2002). All three elements of res judicata are met here. First, the claims raised in *Karsjens* undoubtedly were within the jurisdiction of that court—indeed, if the *Karsjens* court lacked jurisdiction, then this Court equally would lack jurisdiction to consider the claims Plaintiffs raise in this proceeding. Second, the *Karsjens* court dismissed with prejudice the right-to-treatment claim on the merits of that claim. *See Karsjens*, 336 F. Supp. 3d at 983-84, 998. Third, Ground One in this litigation is substantively indistinguishable from the claim in Count III of *Karsjens*, and each of the Plaintiffs to these lawsuits participated as a class member in *Karsjens*. While the Defendants named in these actions are not identical to the defendants named in *Karsjens*, each of the Defendants (except for the lone county Defendant Plaintiffs name in each lawsuit as addressed below) is—like the defendants in

*Karsjens*—an agent of the State of Minnesota whom Plaintiffs sue in his or her official capacity. These state officials are sufficiently in privity with one another to preclude re-litigation of the claim. *See Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 897 (8th Cir. 2005) (noting that an exception to the usual requirement of identical parties applies "when a defendant stands in privity with a defendant in the prior suit"). As the Eighth Circuit has explained:

> A plaintiff may not sue a succession of state employees on the same claim solely on the ground that each employee is not identical to previously sued employees. There is added force for this holding here where all defendants were sued in their official capacities for acts expressly alleged to have been committed by the state itself rather than by the employees as individuals.

*Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983) (quotation omitted).

Having already litigated the failure-to-provide-treatment claim to judgment on the merits in *Karsjens*, Plaintiffs cannot do so again in these lawsuits. Therefore, the Court recommends that Ground One be dismissed.

### b. Denial of Less Restrictive Alternative (Ground Eight)

In Ground Eight, Plaintiffs contend Defendants' actions "constitute deprivation of [their] constitutional right to a less restrictive alternative placement." (ECF No. 1 ¶ 154.) This claim is also barred by res judicata, since Plaintiffs already litigated to judgment the same claim. *See Karsjens*, No, 11-CV-3659 (DWF/TNL), 2022 WL 542467, at *3 (D. Minn. Feb. 23, 2022); *Karsjens*, 336 F. Supp. 3d at 985. The Court thus recommends Ground Eight also be dismissed.

### c. Restrictions on Freedom of Speech (Ground Two)

Plaintiffs allege in Ground Two that various MSOP policies effectively restrict their freedom of speech. Courts of this District have long applied a modified version of the test established in *Turner v. Safley*, 482 U.S. 78 (1987), to evaluate such claims when raised by MSOP clients. "In *Turner*, the Supreme Court set forth four factors to consider when assessing restrictions

placed on prisoners' constitutional rights." *Banks v. Jesson*, No. 11-CV-1706 (SRN/JSM), 2016

WL 3566207, at *7 (D. Minn. June 27, 2016).  These four factors are the following:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; (4) and whether there exist alternatives to accommodate the prisoner with a *de minimis* cost.

*Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (quotations omitted).

The modified-*Turner* approach, first applied in *Ivey v. Mooney*, No. 05-CV-2666

(JRT/FLN), 2008 WL 4527792, at *10 (D. Minn. Sept. 30, 2008), recognizes that although the

MSOP does not have a legitimate *penological* interest in maintaining regulations that restrict the

rights of its clients, the facility often will have legitimate *therapeutic* or *institutional* interests that

require such restrictions.  The MSOP cannot fulfill its therapeutic purpose or maintain safe

operations if clients are not regulated in some respects.  *Ivey* and this District's subsequent

decisions have held those regulations may lawfully restrict the constitutional rights MSOP clients

would otherwise have if they were not detained.  But the MSOP is not free to impose *any*

restrictions it deems appropriate.  Instead, in evaluating the legality of the MSOP regulations, the

Court considers a modified version of the *Turner* factors:

> 1) whether there is a valid, rational connection between the regulation and the legitimate governmental interest put forward to justify it; 2) whether Plaintiff has alternative means of exercising his First Amendment rights; 3) the impact that accommodation of his First Amendment rights would have on guards and other patients, and on the allocation of the general resources of the institution; and 4) whether obvious, easy alternatives exist to meet the state's objectives.

*Id*. (quotations omitted).

16

After reviewing the complaints, the Court concludes Plaintiffs have pleaded at least a colorable claim that certain policies and practices at the MSOP[10] are insufficiently connected to a legitimate therapeutic or institutional interest that they unlawfully restrict the First Amendment rights of MSOP clients. Accordingly, the Court recommends that Ground Two be allowed to proceed at this time.[11]

### d. Access to Legal Materials and Counsel (Ground Five)

Plaintiffs contend in Ground Five that the MSOP officials have unlawfully deprived them of access to legal materials and the ability to seek assistance from legal counsel. (ECF No. 1 ¶ 145.) To sustain a "claim based on denial of access to legal materials, counsel, or the courts," a litigant "must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (citing *Klinger v. Dep't of Corrections*, 107 F.3d 609, 616-17 (8th Cir. 1997)). Put another way, it is not enough for Plaintiffs to allege that the legal materials or assistance available to them are "subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Instead, each Plaintiff must plausibly allege that the alleged shortcomings in legal resources "hindered his efforts to pursue a legal claim." *Id*. Although Plaintiffs contend the legal materials made available to them are substandard or incomplete (*see* ECF No. 1 ¶ 77), nowhere do Plaintiffs provide a concrete example of actual injury

---

[10] Plaintiffs present a colorable claim that policies in place at the MSOP *at the time these actions were filed* might have unlawfully infringed the constitutional rights of MSOP clients. Because Plaintiffs may only seek prospective injunctive relief from Defendants, however, it is possible Plaintiffs' claims have been mooted by changes to those policies and practices over the intervening decade.

[11] That the Court does not recommend dismissing certain claims on preliminary review under § 1915(e)(2)(B) does not preclude Defendants from invoking any available defense under Rule 12 of the Federal Rules of Civil Procedure.

or prejudice resulting from lack of access to legal materials or the courts.  The Court recommends that Ground Five be dismissed for this reason.[12]

### e.  Denial of Religious Freedom (Ground Seven)

Plaintiffs contend in Ground Seven that they have been denied "the right to religion and religious freedom."  (ECF No. 1 at 68, emphasis removed; *see also id.* ¶¶ 150-152.)  This claim is entirely unsupported by factual allegations.  Nowhere do Plaintiffs allege anything whatsoever regarding their beliefs or their practice of religion at the MSOP or how that practice might have been impeded by the MSOP officials or employees.  The Court thus recommends that Ground Five be dismissed

### f.  Double Jeopardy (Ground Ten)

Plaintiffs contend in Ground Ten that their continuing detention constitutes Double Jeopardy in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.  (*See* ECF No. 1 ¶¶ 159-61.)  In contrast with Plaintiffs' other causes of action, Ground Ten amounts to an attack on the legality of their continuing detention *itself*, rather than an attack on the conditions of their confinement.  This kind of collateral attack is prohibited under the doctrine established in *Heck v. Humphrey*:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

---

[12] Subsumed within Plaintiffs' allegations regarding lack of legal materials is an additional allegation that "defendants have a policy in place that allows the defendants to punish clients/patients who share legal paperwork with other clients/patients that are seeking help or legal advice."  (ECF No. 1 ¶ 78.)  The Court regards this allegation as arising more properly under Ground Two (which it does not recommend for dismissal at this time) rather than Ground Five.

512 U.S. 477, 486-87 (1994) (footnote omitted).  Under *Heck*, a prisoner cannot bring claims for monetary damages under section 1983 that necessarily imply the invalidity of the prisoner's detention.

The Court recognizes that these cases differ from *Heck* in two respects.  First, none of the Plaintiffs are prisoners; rather, they are civil detainees.  Second, Plaintiffs seek not only monetary relief, but injunctive relief as well.  But neither of these differences is material for purposes of determining whether *Heck* bars consideration of the Double Jeopardy claim.  First, the Eighth Circuit has recognized *Heck* as equally applicable to claims civil detainees bring to challenge the legality of their confinement.  *See Thomas v. Eschen*, 928 F.3d 709, 713 (8th Cir. 2019).  Second, *Heck* and its progeny prohibit claims under section 1983 for *any* form of relief—whether injunctive, monetary, or declaratory—that, if granted, would necessarily imply the invalidity of detention.  *See Sheldon v. Hundley*, 83 F.3d 231, 233 (8th Cir. 1996).  As *Heck* itself explains, there are multiple procedural avenues through which a litigant can attack wholesale the legality of his or her detention.  Non-habeas civil litigation in federal court is not among those avenues.  The Court therefore recommends that Ground Ten be dismissed pursuant to the *Heck* doctrine.

### g.  *Obligation of Contracts* (Ground Fifteen)

The United States Constitution provides that "No State shall ... pass any ... law impairing the Obligation of Contracts."  U.S. Const. art. I, § 10.  In Ground Fifteen, Plaintiffs allege that Defendants have violated the Contract Clause through their conduct.  (*See* ECF No. 1 ¶¶ 174-76.)

"In determining whether a state law passes muster under the Contract Clause, 'the threshold issue is whether the state law has operated as a substantial impairment of a contractual relationship.'  *Association of Equipment Manufacturers v. Burgum*, 932 F.3d 727, 730 (8th Cir. 2019) (quoting *Sveen v. Melin*, 138 S. Ct. 1815, 1821-22 (2018)).  Plaintiffs' Contract Clause claim

fails at this first step:   The complaints are largely silent regarding the identity of Plaintiffs' contractual relationship that the State has supposedly impeded.[13]   Because Plaintiffs fail to adequately plead Ground Fifteen, the Court recommends that it too be dismissed.

> *h. Cruel and Unusual Punishment and Procedural Due Process (Grounds Nine and Eleven)*

Plaintiffs claim in Ground Nine that they have been subjected to cruel and unusual punishment through the policies implemented at the MSOP.  To the extent Plaintiffs contend they cannot be subjected to punishment *at all* while detained at the MSOP, the claim lacks merit.  As explained above with respect to Ground Two, the MSOP and its officials are permitted to employ regulations, including disciplinary regulations, that are reasonably related to "legitimate therapeutic or institutional interests."  *Ivey*, 2008 WL 4527792, at *6.  That a regulation has a potentially punitive consequence does not in and of itself establish the unlawfulness of the regulation or of any actions taken pursuant to the regulation.

But to pass constitutional muster, the regulation must, in fact, be reasonably related to legitimate therapeutic or institutional interests.  In addition, Plaintiffs remain entitled to due process before or upon being deprived of any protected liberty or property interest, regardless of whether that deprivation is ultimately related to a legitimate therapeutic or institutional interest.  Thus, Ground Eleven, in which Plaintiffs contend that they have been denied due process, is interrelated with with Ground Nine, in which Plaintiffs allege the MSOP regulations punish clients

---

[13] The closest Plaintiffs come to a sufficient allegation on this ground is their assertion that the MSOP's requirement that all outgoing mail be stamped with "MAILED FROM SECURED TREATMENT FACILITY" compels MSOP clients either to use this language or to forego certain (unspecified) contractual relationships.  (*See* ECF No. 1 ¶ 102.)  To the extent Plaintiffs contend this requirement infringes on their First Amendment rights, that aspect of the claim is subsumed within Ground Two, which the Court recommends proceed at this time.  With respect to the obligation of contracts claim, however, Plaintiffs have not alleged the existence of any actual or potential contract the challenged requirement caused them to forego.

without legitimate purpose.  The Court finds the allegations on these grounds sufficient to grant Plaintiffs' IFP applications with respect to both Ground Nine and Ground Eleven insofar as Plaintiffs raise them against Defendants in their official capacities as agents of the State of Minnesota.

### i.  Denial of Liberty (Grounds Six and Twenty)

In Grounds Six and Twenty, Plaintiffs assert claims of "denial of the right to liberty" and "denial of liberty," respectively.  (*See* ECF No. 1 at 68, 76, emphasis removed; *see also id.* ¶¶ 147-149, 189-191.)  It is not entirely clear what specific claim Plaintiffs intend to raise through these causes of action.  In both instances Plaintiffs claim only that Defendants' "above-described conduct" amounted to constitutional violations, with no further elaboration regarding the "conduct" to which the Plaintiffs might be referring.  (*Id*. ¶¶ 148, 190.)  To the extent Plaintiffs allege they have been deprived of specific liberty or property interests during their detention at the MSOP, the Court has recommended those claims be permitted to go forward through Ground Eleven.  Because Grounds Six and Twenty are duplicative of Ground Eleven, the Court recommends Grounds Six and Twenty be dismissed.  *See Trice v. Napoli Shkolnik PLLC*, No. 18-CV-3367 (ADM/KMM), 2019 WL 6324867, at *2 (D. Minn. Nov. 26, 2019) (citing *Blakley v. Schlumberger Technology Corp.*, 648 F.3d 921, 931-32 (8th Cir. 2011)).  To the extent Plaintiffs allege their detention itself resulted from a lack of due process, *Heck* bars that claim, as it necessarily implies the invalidity of Plaintiffs' civil commitment.  The Court recommends Grounds Six and Twenty be dismissed for these reasons.

### j.  Unreasonable Searches and Seizures (Ground Three)

In Ground Three, plaintiffs contend MSOP officials have conducted unreasonable searches and seizures in violation of the Fourth Amendment of the U.S. Constitution. This ground for relief encompasses three separate claims. First, Plaintiffs allege MSOP policy permits Defendants to unlawfully conduct property searches (such as room searches) in violation of the Fourth Amendment. Second, Plaintiffs allege Defendants unlawfully conduct unclothed body searches (or "strip searches") in violation of the Fourth Amendment. Third, Plaintiffs allege Defendants have unlawfully seized personal property during the course of these searches. The Court will evaluate each claim separately.

### i. Property Searches

Plaintiffs contend Defendants' searches of their rooms without warrants and without reasonable suspicion of wrongdoing violate their Fourth Amendment rights. (*See* ECF No. 1 ¶¶ 106-07.) "[I]nvoluntarily civilly committed persons retain the Fourth Amendment right to be free from unreasonable searches that is analogous to the right retained by pretrial detainees." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1028 (8th Cir. 2012) (citing *Serna v. Goodno*, 567 F.3d 944, 948-49 (8th Cir. 2009)). "'[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has [a reasonable] expectation of privacy in the place searched …'" *United States v. Crumble*, 878 F.3d 656, 659 (8th Cir. 2018) (quoting *Minnesota v. Carter*, 525 U.S. 83, 88 (1998)).

"While a pretrial detainee retains 'some Fourth Amendment rights upon commitment to a corrections facility,' his reasonable expectation of privacy is 'necessarily' of a 'diminished scope' given the realities of institutional confinement." *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1003 (D. Minn. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 557-58 (1979)). Courts of this District have consistently concluded that, due to the nature of their commitment, MSOP detainees have no

reasonable expectation of privacy in their rooms. *See, e.g., Benson v. Piper*, No. 17-CV-0266 (DWF/TNL), 2019 WL 2017319, at *15-16 (D. Minn. Jan. 25, 2019); *United States v. Senty-Haugen*, 17-CR-0182 (JNE/LIB), 2017 WL 6543824, at *5-8, 12-13 (D. Minn. Nov. 21, 2017); *Daniels v. Jesson*, No. 13-0736 (JNE/SER), 2014 WL 3629874, at *6 (D. Minn. July 22, 2014). The Court concurs with the reasoning of those decisions. Because Plaintiffs have no reasonable expectation of privacy in their rooms, they cannot plausibly allege searches of their rooms violate the Fourth Amendment. Therefore, the Court recommends that this aspect of Ground Three be dismissed.

ii. Strip Searches

Plaintiffs' claims related to unclothed body searches are not as straightforward. Unlike room searches, as to which MSOP officials are practically unconstrained, the reasonableness, and therefore the legality, of bodily searches depends on the specific factual circumstances of the search. *See Benson*, 2019 WL 2017319, at *17; *Allan v. Ludeman*, No. 10-CV-0176 (ADM/JJK), 2011 WL 978768, at *4 (D. Minn. Jan. 18, 2011) (noting that "strip searches conducted at MSOP facilities may or may not be reasonable, and thus may or may not be constitutional, depending on the circumstances.").

The problem for Plaintiffs is that the policy and practices they object to in the complaints—specifically, the strip search of all MSOP clients upon entry to and exit from the facility (*see* ECF No. 1 ¶ 111)—have already been litigated and found to be lawful. *See Senty-Haugen v. Goodno*, No. 04-1077 (ADM/JJG), 2005 WL 2917464, at *8 (D. Minn. Nov. 4, 2005) (no Fourth Amendment violation when detainee subjected to unclothed body search upon entry to MSOP). Indeed, Plaintiffs fully litigated a similar claim—namely, whether MSOP detainees could be subjected to unclothed bodily searches without reasonable suspicion of wrongdoing when moved

*within* the facility—as members of the class certified in *Karsjens*. *See Asher v. Harpstead*, No. 19-CV-2381 (PJS/DTS), 2021 WL 537930, at *5 (D. Minn. Jan. 15, 2021). The Eighth Circuit likewise has rejected similar claims. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1029-31 (8th Cir. 2012). The Court finds the reasoning of those decisions persuasive and equally applicable here. A policy of unclothed bodily searches upon exit or entry from the MSOP is, on its face, reasonably related to the security of the facility. Absent additional specific factual allegations that, if true, would cause those otherwise lawful searches to become unreasonable, Plaintiffs cannot state a claim for relief under section 1983 with respect to the strip searches. And because Plaintiffs provide no such factual allegations in the complaints, the Court recommends this aspect of Ground Three also be dismissed.

### iii. Property Seizures

Plaintiffs also bring Fourth Amendment claims challenging MSOP policies concerning the seizure of personal property. The Court views this claim as closely related to Plaintiffs' claim in Ground Eleven, discussed above, that Plaintiffs have been deprived of protected liberty and property interests without due process of law. As the Court recommends Ground Eleven be permitted to go forward at this time, the Court also recommends this aspect Ground Three be allowed to proceed.

### k. Supervisory Liability (Ground Eighteen)

In Ground Eighteen, Plaintiffs allege that "the defendants failed to Supervise their employees in violation of the Fourteenth Amendment of the United States Constitution." (ECF No. 1 ¶ 184.) It is well established that supervisory officials do not have *respondeat superior* liability under section 1983. In other words, the fact that a person has supervisory authority over someone who has violated the constitutional rights of another is not alone enough to hold the

supervisor liable for that error.  *See, e.g.*, *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001).

Instead, to plead a failure-to-supervise claim under section 1983, Plaintiffs must adequately allege

that the "failure to supervise and train 'amounts to deliberate indifference to the rights of persons

with whom [the plaintiff came] into contact.'"  *Doe v. Fort Zumwalt R-II School Dist.*, 920

F.3d 1184, 1189 (8th Cir. 2019) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

(1989)).  The closest Plaintiffs come to making such an allegation is their conclusory state law

claim that Defendants were negligent in their hiring practices at the MSOP (ECF No. 1 ¶¶ 177-

79), which the Court recommends be dismissed for the reasons discussed below.  Moreover,

"[d]eliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on

negligence, inadvertence, or good faith error."  *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir.

2012) (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  Nothing Plaintiffs allege in the

complaints rises to the level of deliberate indifference in supervisory practices.  Accordingly, the

Court recommends Ground Eighteen be dismissed.

### *l.  Totality of the Conditions (Ground Seventeen)*

In Ground Seventeen, Plaintiffs allege that the totality of the conditions at the MSOP, when

taken in combination, amount to a violation of constitutional rights.  (*See* ECF No. 1 ¶¶ 180-82.)

Plaintiffs, as members of the class certified in *Karsjens*, fully litigated a similar claim that the

*Karsjens* Court considered and rejected.  *See Karsjens*, 2022 WL 542467, at *17.  Because the

circumstances here are somewhat different, however, the Court is not prepared to find at this early

stage in the proceedings that the resolution of the totality-of-the-conditions claim litigated in

*Karsjens* precludes Plaintiffs' prosecution of a similar claim in these lawsuits.  Among other

differences, the *Karsjens* court concluded that each individual constitutional claim Plaintiffs raised

in that matter ultimately lacked merit, which permitted the court to also conclude the totality of

the conditions at MSOP likewise did not violate MSOP clients' constitutional rights.  *See id*. ("As discussed above, the Court finds that each condition of confinement referenced or alluded to in Plaintiffs' Third Amended Complaint is reasonably related to a legitimate government objective, is not excessive in relation to the objective(s) and is not punitive under *Bell*.").  Although the Court finds most of the claims Plaintiffs present in these lawsuits should be dismissed pursuant to § 1915(e)(2)(B), it recommends that a small number of Plaintiffs' constitutional claims be permitted to proceed.  The Court cannot conclude the totality of the conditions at the MSOP is lawful while specific instances of allegedly unlawful conditions or policies at MSOP remain to be litigated.[14]  Accordingly, the Court recommends Ground Seventeen proceed at this time.

### m.  Violation of Police Powers (Ground Nineteen)

In Ground Nineteen, Plaintiffs allege Defendants have acted in "violation of the police powers of the state."  (ECF No. 1 at 75, emphasis removed; *see also id.* ¶¶ 186-188.)  Plaintiffs assert this claim arises under the Tenth Amendment of the U.S. Constitution (*see* ECF No. 1 ¶ 187), but "it is the power of the federal government which is constrained by the Tenth Amendment, not the power of the States.  Plaintiffs cannot found a section 1983 claim on the Tenth Amendment because it is neither a source of federal authority nor a fount of individual constitutional rights." *Stone v. City of Prescott*, 173 F.3d 1172, 1175 (9th Cir. 1999).  The gist of Plaintiffs' claim appears to be that Defendants lack a rational basis upon which to implement the MSOP civil commitment scheme (*see* ECF No. 1 at ¶ 131), but Ground Nineteen is so vague as to lack plausibility.

---

[14] For Plaintiffs' totality-of-the-conditions claim to succeed they must establish that their constitutional rights have been violated more concretely through a specific policy or custom that itself violates the law.  *See Wilson v. Seiter*, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.").

Moreover, the claim would in any event amount to a collateral attack on the legality of detention in violation of *Heck*.  The Court thus recommends Ground Nineteen be dismissed.

### n.  Violation of Oath of Office (Ground Twenty-One)

Finally, in Ground Twenty-One, Plaintiffs allege that Defendants Mark Dayton, Lori Swanson, Cal Ludeman, and Lucinda Jesson violated their "sacred oath of office" by failing to protect Plaintiffs' constitutional rights.  (ECF No. 1 at 76, emphasis removed; *see also id.* ¶¶ 192-194.)  For the reasons explained above with respect to Plaintiffs' personal-capacity claims, the Court recommends Ground Twenty-One be dismissed in its entirety pursuant to § 1915(e)(2)(B).

### 3.    Official-Capacity Claims Against County Officials

Nearly all the Defendants named in Plaintiffs' lawsuits are agents of the State of Minnesota. In each lawsuit, however, Plaintiffs name one county official in their personal and official capacities:  the director of the Department of Social Services (or functional equivalent) for the county where the Plaintiff's commitment proceedings were conducted.[15]  Plaintiffs' personal-capacity claims against the county Defendants fail for the same reasons that their personal-capacity claims against the state officials fail:  Plaintiffs do not plead plausible factual allegations that the county officials in particular have done anything unlawful.

But unlike the official-capacity claims against state officials under section 1983, Plaintiffs' official-capacity claims against county officials fail in their entirety.  Insofar as Plaintiffs seek monetary relief from county officials in their official capacities, Plaintiffs would be required to establish that a violation of their constitutional rights "resulted from (1) an official municipal

---

[15] The county Defendants are as follows: (1) In *White*, Defendant John or Jane Doe; (2) in *Scott*, Defendant Angie Eason; (3) in *Davidson*, Defendant John or Jane Doe; (4) in *Fries*, Defendant Gary Fahnhorst; (5) in *Hajek*, Defendant John or Jane Doe; (6) in *Hartleib*, Defendant Eileen Waterman; (7) in *Stevens*, Defendant John or Jane Doe; and (8) in *Williams*, Defendant John or Jane Doe.

policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."

*Atkinson v. City of Mountain View, Missouri*, 709 F.3d 1201, 1214 (8th Cir. 2013) (citations and

quotations omitted); *accord Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690-91

(1978).  Plaintiffs do not plausibly allege that any of the respective counties' policies, customs, or

deliberate indifference violated their constitutional rights.  Indeed, Plaintiffs plead almost nothing

whatsoever regarding the counties' conduct except that the counties happened to be the

jurisdictions in which Plaintiffs' civil commitment proceedings occurred.  To the extent Plaintiffs

seek injunctive relief, Plaintiffs do not plausibly allege that the county Defendants are appropriate

targets of that relief.  Based on Plaintiffs' allegations, the Court cannot conclude county officials

have any authority to alter the allegedly unlawful MSOP policies at issue.  Accordingly, the Court

recommends Plaintiffs' claims under section 1983 against the county defendants be dismissed in

their entirety.

### B.    Other Federal Claims

#### 1.    Conspiracy under 42 U.S.C. § 1985 (Ground Twelve)

Plaintiffs allege in Ground Twelve that the Defendants have all conspired with one another

to deny due process to MSOP clients in violation of 42 U.S.C. § 1985(3).  (ECF No. 1 ¶¶ 165-

167.)  The United States Supreme Court explained:

> [T]o make out a violation of § 1985(3) ... the plaintiff must allege
> and prove four elements: (1) a conspiracy; (2) for the purpose of
> depriving, either directly or indirectly, any person or class of persons
> of the equal protection of the laws, or of equal privileges and
> immunities under the laws; and (3) an act in furtherance of the
> conspiracy; (4) whereby a person is either injured in his person or
> property or deprived of any right or privilege of a citizen of the
> United States.

*United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO v. Scott*, 463

U.S. 825, 828-29 (1983).

Plaintiffs' complaints fail at steps one and two.  First, "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" *Deck v. Leftridge*, 771 F.2d 1168, 1170 (8th Cir. 1985) (quoting *Smith v. Bacon*, 699 F.2d 434, 436 (8th Cir. 1983)).  Plaintiffs' complaints lack sufficient factual allegations that, if proved true, would establish that Defendants acted with the necessary joint intent.  Second, even if Plaintiffs adequately pleaded the necessary conspiracy among two or more Defendants, Plaintiffs do not provide a factual basis upon which the Court can conclude that the aim of that joint venture was to deprive Plaintiffs of equal protection of the laws.  Plaintiffs do not allege they are members of a protected class and do not identify a similarly-situated comparator who allegedly received preferential treatment.  *See, e.g.*, *Robbins v. Becker*, 794 F.3d 988, 996 (8th Cir. 2015) (discussing class-of-one claims).  The Court therefore recommends Ground Twelve be dismissed.

### 2.     Americans with Disabilities Act and Rehabilitation Act

Plaintiffs' complaints *very* briefly refer to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq.; and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., as potential sources of relief.  (ECF No. 1 ¶ 123.)  But it is not entirely clear that Plaintiffs, in fact, seek relief under either the ADA or the Rehabilitation Act because Plaintiffs do not mention those provisions among any of the twenty-one causes of action they expressly plead in their complaints. (*See id.* ¶¶ 132-194.)  In any event, to succeed under either of these provisions, Plaintiffs would need to establish—at a minimum—that they are disabled within the meaning of these statutes and that Defendants have subjected them to differential treatment because of their disabilities.  *See* 42 U.S.C. § 12102(2); *Olson v. Dubuque Community School Dist.*, 137 F.3d 609, 611 (8th Cir. 1998) (noting elements of ADA claim); *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) (stating that cases interpreting the ADA and the Rehabilitation Act are "interchangeable").  Plaintiffs

include no such allegations in their complaints. None of the eight pleadings allege anything whatsoever regarding Plaintiffs' supposed disabilities, much less how Defendants have treated them differently due to those disabilities. Accepting all of Plaintiffs' non-conclusory factual allegations as true, there is insufficient basis upon which a factfinder could conclude Defendants have violated either the ADA or the Rehabilitation Act. The Court thus recommends that, to the extent Plaintiffs seek relief under the ADA or the Rehabilitation Act, those claims be dismissed.

## C.   State Law Claims

Plaintiffs also raise several claims under state law. The Court has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367 and will review Plaintiffs' claims under state law pursuant to section 1915(e)(2)(B).

### 1.   Claims under the Minnesota Constitution

Plaintiffs present most of their claims for relief under section 1983 as violations of the Minnesota Constitution. (*See, e.g.*, ECF No. 1 ¶ 136, "The above-described conduct … constitute[s] an unreasonable and unwarranted restriction on plaintiff's right to freedom of speech and expression … guaranteed by the First and Fourteenth Amendments to the United States Constitution, and Article I … of the Minnesota Constitution.") But there is no corollary to section 1983 under state law, and "courts have repeatedly stated that Minnesota has not recognized private remedies for violations of the Minnesota Constitution." *Fearing v. St. Paul Police Dep't*, No. 02-4744 (ADM/JSM), 2005 WL 914733, at *5 (D. Minn. Apr. 20, 2005). The Court therefore recommends the bulk of Plaintiffs' claims arising under the Minnesota Constitution be summarily dismissed without further analysis.

The sole exception to this is that Minnesota courts have permitted litigants to bring claims directly under Article 1, Section 16 of the Minnesota Constitution, which (broadly speaking)

protects the right to religious liberty.  *See Daywitt v. Moser*, No. 17-CV-1720 (WMW/LIB), 2019 WL 5104804, at *5-6 (D. Minn. June 5, 2019) (collecting cases).  But as explained above in the analysis of Ground Seven, Plaintiffs' religious deprivation claims are entirely conclusory.  The very lengthy pleadings include no factual allegations whatsoever regarding Plaintiffs' religious beliefs or any differential treatment resulting from those religious beliefs.  Just as the Court recommends Ground Seven be dismissed as conclusory, it also recommends any claim premised upon Article 1, Section 16 of the Minnesota Constitution be dismissed pursuant to section 1915(e)(2)(B).

### 2.    Invasion of Privacy (Ground Four)

Plaintiffs allege in Ground Four that the "conduct by [each of the defendants] constitute[s] an unreasonable and gross invasion of plaintiff's privacy in violation of his rights, privileges and immunities guaranteed by the Fourth and Fifth Amendments to the United States Constitution and the Minnesota Constitution."  (ECF No. 1 ¶ 142.)  To the extent Ground Four merely restates the illegal search claims Plaintiffs raise in Ground Three, the Court recommends Ground Four be dismissed for the same reasons that it recommends Ground Three be dismissed.  Moreover, as previously noted, the Minnesota Constitution itself generally does not provide private rights of action to litigants, and any privacy claim arising directly under the Minnesota Constitution should also be dismissed for this reason.

The Court also considers whether Plaintiffs seek to bring a claim for invasion of privacy under state common law.  The State of Minnesota has recognized three separate causes of action under the broad category of invasion of privacy torts:  intrusion upon seclusion, appropriation, and publication of private facts.  *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233-36 (Minn. 1998).  Of the three, intrusion upon seclusion is the closest fit for the specific claims and factual

allegations presented in the complaints.  "The tort has three elements: (a) an intrusion; (b) that is highly offensive; and (c) into some matter in which a person has a legitimate expectation of privacy."  *Swarthout v. Mutual Service Life Ins. Co.*, 632 N.W.2d 741, 744 (Minn. Ct. App. 2001).  As the Court determined with respect to Ground Three, Plaintiffs did not have a legitimate expectation of privacy with respect to any of the searches (or intrusions) Defendants allegedly conducted.  For the same reason, the Court recommends any claim of intrusion upon seclusion be dismissed for failure to state a claim on which relief may be granted.

### 3. Intentional and Negligent Infliction of Emotional Distress (Grounds Thirteen and Fourteen)

In Grounds Thirteen and Fourteen, Plaintiffs allege intentional and negligent infliction of emotional distress, respectively.[16]  (ECF No. 1 ¶¶ 168-170, 171-173.)  "The elements of intentional infliction of emotional distress require extreme and outrageous conduct that is intentional or reckless and causes severe emotional distress."  *Anderson v. Peavey*, No. C4-96-2557, 1997 WL 343166, at *1 (Minn. Ct. App. June 24, 1997) (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983)).  "The severity of the resulting mental distress must be so severe that no reasonable man could be expected to endure it.'"  *Id*.  To the extent Plaintiffs allege they have suffered severe emotional distress due to extreme outrageous conduct, they largely allege it is *other clients'* conduct, not Defendants' conduct, that caused the distress at the heart of their claim.  (*See* ECF No. 1 ¶¶ 88-90.)  To the extent Plaintiffs allege at all that Defendants have inflicted emotional distress through their actions, Plaintiffs' allegations are largely conclusory.  (*See, e.g.*, ECF No. 1 ¶ 45, "Since [the time of his commitment], Mr. White has had to put up with staffs [sic] abuse and their infliction of severe emotional distress.".)  Finally, to the extent

---

[16] Plaintiffs purport to raise each claim under the U.S. Constitution, but claims of both intentional and negligent infliction of emotional distress are plainly matters of state law; not federal law.

Plaintiffs' claim is predicated on the MSOP's practice of double-bunking clients, their claim is now precluded by the judgment in *Karsjens*, which affirmed the legality of this practice at the MSOP. *See Karsjens*, 2022 WL 542467, at *14 (D. Minn. Feb. 23, 2022).

Plaintiffs' claim of negligent infliction of emotional distress equally lacks merit. "Emotional-distress damages are recoverable in negligent-infliction-of-emotional-distress actions only in two circumstances—when the claimant is either physically injured or placed in physical danger due to another's negligence." *Albert v. GEICO General Insurance Co.*, No. A21-0117, 2021 WL 4428920, at *2 (Minn. Ct. App. Sept. 16, 2021) (citing *Engler v. Illinois Farmers Ins. Co.*, 706 N.W.2d 764, 767 (Minn. 2005)). Plaintiffs allege no physical injury in any of the eight pleadings, and the only specific example of potential future physical danger alleged relates to the practice of double-bunking, which the resolution of *Karsjens* precludes Plaintiffs from challenging in this litigation. The Court therefore recommends Grounds Thirteen and Fourteen be dismissed.

### 4. Negligent Hiring and Credentialing (Ground Sixteen)

Finally, Plaintiffs allege in Ground Sixteen that Defendants violated the law through negligent hiring practices.[17] (ECF No. 1 ¶¶ 177-79.) There are two fatal problems with this claim. First, it is predicated almost entirely on conclusory allegations. Plaintiffs do not set forth an adequate factual basis from which a factfinder could conclude that anyone associated with the MSOP acted negligently with respect to hiring decisions. Second, under Minnesota law, "[n]egligent-supervision claims are premised on an employer's duty to control employees and prevent them from intentionally or negligently inflicting personal injury." *Johnson v. Peterson*,

---

[17] Plaintiffs purport to bring this claim under both the U.S. and Minnesota Constitutions. But as explained above with respect to Plaintiffs' supervisory liability claims, mere negligence is not a basis for liability under section 1983. And as just explained, the Minnesota Constitution does not generally provide private rights of action. The Court therefore interprets Ground Sixteen as presenting more general claims of negligence under state law.

734 N.W.2d 275, 277 (Minn. Ct. App. 2007).  "Negligent-hiring claims are likewise predicated on the fact that it should be foreseeable that an employee posed a threat of physical injury to others." *Id*.  In other words, to succeed on their supervisory claims in Ground Sixteen, Plaintiffs must establish not only that the MSOP employees acted wrongfully, but that the supervisor "knew or should have known that the employee was *violent or aggressive* and might engage in injurious conduct."  *Id.* at 278 (emphasis added).  Although Plaintiffs support their claims of intentional and negligent infliction of emotional distress with allegations that other clients at the MSOP have subjected them to violent conduct, Plaintiffs do not allege anywhere in their pleadings that MSOP employees subjected Plaintiffs to violent or aggressive conduct.  In the absence of such allegations Plaintiffs' negligent hiring claim necessarily fails.

In Ground Sixteen, Plaintiffs also present a claim of negligent credentialing under Minnesota law.  Minnesota law does recognize a cause of action predicated upon negligent credentialing, *see generally Larson v. Wasemiller*, 738 N.W.2d 300 (Minn. 2007), but the claim is an awkward fit for this litigation.  First, Plaintiffs to not allege that Defendants themselves credentialed anyone or are responsible for credentialing anyone.  Second, Plaintiffs appear to predicate their negligent-credentialing claim upon the supposed *lack* of credentials of unspecified persons employed at the MSOP.  But if those persons have not been credentialed at all (as Plaintiffs allege), then there is no one who can be held liable for having negligently credentialed those persons.  The Court therefore recommends Ground Sixteen be dismissed in its entirety.

## CONCLUSION

For the reasons set forth above, the Court recommends the bulk of Plaintiffs' claims be dismissed without prejudice pursuant to section 1915(e)(2)(B).  The Court recommends the following claims under section 1983 be allowed to proceed against the state Defendants in their

official capacities only: (1) Ground Two, alleging certain policies or practices at the MSOP unlawfully restrict freedom of speech; (2) Ground Three, to the extent Plaintiffs allege MSOP officials have a policy or practice of unlawfully seizing property; (3) Ground Nine, alleging certain policies or practices at the MSOP amount to cruel and unusual punishment; (4) Count Eleven, alleging MSOP policies do not afford clients adequate procedural protections; and (5) Count Seventeen, alleging conditions at the MSOP in their totality violate MSOP clients' constitutional rights. Because Plaintiffs do not adequately allege the personal involvement of any particular Defendant in any specific instance of unlawful conduct, the Court recommends all claims against Defendants in their personal capacities be dismissed without prejudice under section 1915(e)(2)(B). And because Plaintiffs do not adequately plead a claim for relief with respect to the lone county official named as a Defendant in each lawsuit, the Court recommends the county Defendants be dismissed entirely from this litigation.

Because the Court recommends some claims be allowed to proceed, the Court also grants Plaintiffs' IFP applications and directs officers of the Court to effect service of process, *see* 28 U.S.C. § 1915(d). The Court further extends Defendants' obligation to answer or otherwise respond to Plaintiffs' complaints beyond the deadline established by Rule 12(a) of the Federal Rules of Civil Procedure until after this Report and Recommendation is resolved.

Next, because these lawsuits were stayed for so long, the Court asked each Plaintiff to provide notice of intent to continue litigating their case, failing which the Court would dismiss any nonresponding Plaintiff's lawsuit without prejudice for failure to prosecute. Each of the eight Plaintiffs provided the necessary notice of intent to prosecute. Some Plaintiffs provided this notice by filing a formal motion requesting that the Court not dismiss the proceeding for failure to prosecute. The Court grants those motions.

Finally, four of the Plaintiffs— Joseph Allen Hajek, Lloyd Hartleib, Karl Godfrey Stevens, and Dale Allen Williams, Sr.—have requested that counsel be appointed to represent them in their respective proceedings. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). "When determining whether to appoint counsel for an indigent civil litigant, the district court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent to present his claim." *Id*. Although the complaints are long and complex, they will be considerably less complex if the Court's Report and Recommendation is adopted. Only five claims would remain pending with respect to the state defendants in their official capacities. Plaintiffs' entitlement to relief on those claims is likely to turn on the content of policies at the MSOP, which is well within Plaintiffs' capabilities to investigate—even as pro se litigants. Moreover, Plaintiffs have demonstrated at least a baseline ability to present their claims and litigate in federal court. Finally, while conflicting testimony may emerge later on, this factor does not currently outweigh the others. Accordingly, the Court denies each of the motions for appointment of counsel.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.     The following applications to proceed *in forma pauperis* are **GRANTED**:

   a.     *White*, No. 11-CV-3702, (ECF No. [2]).

   b.     *Scott*, No. 11-CV-3714, (ECF No.[ 2]).

   c.     *Davidson*, No. 11-CV-3733, (ECF No. [2]).

   d.     *Fries*, No. 12-CV-0062, (ECF No. [2]).

     e.      *Hajek*, No. 12-CV-0343, (ECF No. [2]).

     f.      *Hartleib*, No. 12-CV-0344, (ECF No. [3]).

     g.      *Stevens*, No. 12-CV-0495, (ECF No. [2]).

     h.      *Williams*, No. 12-CV-0881, (ECF No. [2]).

2.      The following motions not to dismiss for failure to prosecute are **GRANTED**:

     a.      *Scott*, No. 11-CV-3714, (ECF No. [13]).

     b.      *Davidson*, No. 11-CV-3733, (ECF No. [16]).

     c.      *Fries*, No. 12-CV-0062, (ECF No. [15]).

     d.      *Hajek*, No. 12-CV-0343, (ECF No. [17]).

     e.      *Hartleib*, No. 12-CV-0344, (ECF No. [18]).

     f.      *Stevens*, No. 12-CV-0495, (ECF No. [16]).

3.      The following motions for appointment of counsel are **DENIED**:

     a.      *Hajek*, No. 12-CV-0343, (ECF No. [4]).

     b.      *Hartleib*, No. 12-CV-0344, (ECF No. [2]).

     c.      *Stevens*, No. 12-CV-0495, (ECF No. [4]).

     d.      *Williams*, No. 12-CV-0881, (ECF No. [4]).

4.      The Court directs the U.S. Marshals Service to effect service of process on the Defendants in their official capacities as agents of the State of Minnesota, except as provided in Paragraph 6 below, consistent with Rule 4(j) of the Federal Rules of Civil Procedure.

5.      Following service of process, Defendants must answer or otherwise respond to the complaints within 35 days of the date when the Court's pending Report and Recommendation is resolved.

6.     Service of process shall not be effected upon the following Defendants unless otherwise ordered by the Court:

    a.     Defendant John or Jane Doe in *White v. Dayton et al.*, No. 11-CV-3702.

    b.     Defendant Angie Eason in *Scott v. Dayton et al.*, No. 11-CV-3714.

    c.     Defendant John or Jane Doe in *Davidson v. Dayton et al.*, No. 11-CV-3733.

    d.     Defendant Gary Fahnhorst in *Fries v. Dayton et al.*, No. 12-CV-0062.

    e.     Defendant John or Jane Doe in *Hajek v. Dayton et al.*, No. 12-CV-0343.

    f.     Defendant Eileen Waterman in *Hartleib v. Dayton et al.*, No. 12-CV-0344.

    g.     Defendant John or Jane Doe in *Stevens v. Dayton et al.*, No. 12-CV-0495.

    h.     Defendant John or Jane Doe in *Williams v. Dayton et al.*, No. 12-CV-0881.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.     The following claims be DISMISSED WITHOUT PREJUDICE from each of the above-captioned civil actions:

    a.     Ground One;

    b.     The unlawful-search claims raised in Ground Three;

    c.     Ground Four;

    d.     Ground Five;

    e.     Ground Six;

    f.     Ground Seven;

    g.     Ground Eight;

    h.     Ground Ten;

  i.  Ground Twelve;

  j.  Ground Thirteen;

  k.  Ground Fourteen;

  l.  Ground Fifteen;

  m.  Ground Sixteen;

  n.  Ground Eighteen;

  o.  Ground Nineteen;

  p.  Ground Twenty;

  q.  and Ground Twenty-One.

2.  The following defendants be DISMISSED WITHOUT PREJUDICE from this litigation:

  a.  Defendant John or Jane Doe in *White v. Dayton et al.*, No. 11-CV-3702.

  b.  Defendant Angie Eason in *Scott v. Dayton et al.*, No. 11-CV-3714.

  c.  Defendant John or Jane Doe in *Davidson v. Dayton et al.*, No. 11-CV-3733.

  d.  Defendant Gary Fahnhorst in *Fries v. Dayton et al.*, No. 12-CV-0062.

  e.  Defendant John or Jane Doe in *Hajek v. Dayton et al.*, No. 12-CV-0343.

  f.  Defendant Eileen Waterman in *Hartleib v. Dayton et al.*, No. 12-CV-0344.

  g.  Defendant John or Jane Doe in *Stevens v. Dayton et al.*, No. 12-CV-0495.

  h.  Defendant John or Jane Doe in *Williams v. Dayton et al.*, No. 12-CV-0881.

3.  Each of the remaining Defendants be DISMISSED WITHOUT PREJUDICE in their personal capacities.

Dated: January 3, 2023       *s/ Dulce J. Foster*
              DULCE J. FOSTER
              United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).